**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
  VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: February 1, 2018
Date Decided: May 1, 2018

Thad J. Bracegirdle, Esquire
Scott B. Czerwonka, Esquire
Wilks, Lukoff & Bracegirdle, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19801

John L. Reed, Esquire
Derrick B. Farrell, Esquire
DLA Piper LLP (US)
1201 North Market Street, Suite 2100
Wilmington, DE 19801

William D. Johnston, Esquire
Tammy L. Mercer, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 King Street
Wilmington, DE 19801

> Re: *Eames v. Quantlab Group GP, LLC*
> C.A. No. 2017-0792-JRS

Dear Counsel:

This case concerns the *de jure* management of Quantlab Group, LP ("Quantlab LP"), a Delaware limited partnership. Prior to November 6, 2017, Quantlab LP's sole general partner was Quantlab Group GP, LLC ("Quantlab GP"). On November 6, 2017, a voting trustee, acting by written consent on behalf of approximately 96% of Quantlab LP's voting limited partnership interests, purported

to add Quantlab Group GP II, LLC ("Quantlab GP II") as a general partner of Quantlab LP and then remove Quantlab GP from its position as general partner.

Under Quantlab LP's limited partnership agreement (the "LPA"),[1] Quantlab LP's general partner may be removed without cause only if at least one other general partner remains, and the addition of a new general partner requires the consent of the then-acting general partner. With these requirements in mind, simultaneous with the voting trustee's actions, Plaintiff, Bruce Eames, acting as a manager of Quantlab GP, purported to consent to Quantlab GP II's addition as a general partner of Quantlab LP so that a general partner would remain upon Quantlab GP's subsequent removal. Plaintiffs claim that, by virtue of these actions, Quantlab GP II is now Quantlab LP's sole general partner.

The same day these written consents were executed, Plaintiffs filed this action under 6 *Del. C.* § 17-110 to confirm that (1) Quantlab GP was removed as general partner of Quantlab LP and (2) Quantlab GP II was admitted as general partner of Quantlab LP and rightfully serves in that capacity. On December 14, 2017, Defendant moved for partial summary judgment on the ground that Quantlab GP II's

---

[1] The operative LPA is the Fourth Amendment and Complete Restatement of the Agreement of Limited Partnership of Quantlab Group, LP, a Delaware Limited Partnership. *See* Verified Compl. ("Compl."), Ex. 1.

addition as general partner was invalid under the clear and unambiguous terms of the LPA, such that Quantlab GP remains Quantlab LP's sole general partner.[2]

Defendant's motion must be granted. Under the unambiguous terms of the LPA, it was necessary to admit a second general partner before Quantlab GP could be removed, and admitting a new general partner required Quantlab GP's consent. No such consent was obtained; Quantlab GP did not agree in advance to the voting trustee's actions by virtue of signing the voting trust agreement giving the trustee his authority and Eames, in his capacity as a Quantlab GP manager, lacked unilateral authority to consent to Quantlab GP II's addition as general partner of Quantlab LP. Because Quantlab GP II was not properly admitted as general partner of Quantlab LP, Quantlab GP could not be removed as general partner. Accordingly, Quantlab GP remains the sole general partner of Quantlab LP.

---

[2] Defendant's motion is styled "Motion for Partial Summary Judgment." Def. Quantlab Group GP, LLC's Opening Br. in Supp. of its Mot. for Partial Summ. J. ("Def.'s Opening Br."). Granting Defendant's motion, however, would determine the rightful management of Quantlab LP, the sole issue presented in Plaintiffs' verified complaint, and moot Defendant's equitable arguments. *See id.* 2 n.2. Since I grant Defendant's motion, I need not (and decline to) address Defendant's equitable arguments.

## I.  BACKGROUND

In accordance with Court of Chancery Rule 56(c), I have drawn the facts from the pleadings, uncontested facts in the parties' submissions, and materials presented in connection with the motion.  Unless otherwise indicated, I have determined that the following facts are undisputed.

### A. Parties and Relevant Non-Parties

Plaintiffs, Bruce P. Eames and Andrey Omeltchenko, are limited partners of Nominal Defendant, Quantlab LP, a Delaware limited partnership headquartered in Houston, Texas.[3]  Plaintiffs hold Quantlab LP Class A limited partnership interests, which are Quantlab LP's only limited partnership interests entitled to vote on the admission and removal of general partners.[4]  Eames also serves as a manager of Quantlab GP.[5]

---

[3] Compl. ¶ 1.

[4] Compl. ¶¶ 1–3; *see* Transmittal Aff. of Ethan H. Townsend, Esq. ("Townsend Aff."), Ex. B (LPA) §§ 5.3, 5.4.  Quantlab LP "currently has the following outstanding classes of limited partnership interests: Class A, Class B, Class C, Class D, Class E, Class G-1 and Class G-2."  Compl. ¶ 1.  In addition to the Class A limited partnership interests, Eames holds Class G-2 and Omeltchenko Class D and Class G-2 limited partnership interests. *Id.* ¶¶ 2–3; *see also* LPA, sched. A.

[5]  *See* Tr. of Oral Arg. Feb. 1, 2018 ("Tr.") 7:6–14.

Defendant, Quantlab GP, is a Delaware limited liability company.[6]  It was established in 2008 for the sole purpose of serving as Quantlab LP's general partner.[7]  Prior to November 6, 2017, Quantlab GP had served as Quantlab LP's sole general partner for approximately ten years.[8]  It also holds a 1% Class A limited partnership interest in Quantlab LP.[9]  Quantlab GP has two members, Marco, LP ("Marco")[10] and AVG Holdings, LP ("AVG").[11]

---

[6] Compl. ¶ 4.

[7] Townsend Aff., Ex. A ("LLC Agmt."), pmbl. & § 2.5.

[8] Compl. ¶ 4; Def.'s Opening Br. 20.

[9] Compl. ¶ 4; LPA, sched. A.

[10] Non-party, W.E. Bosarge, Jr. ("Bosarge"), and his family control Marco, which holds 75% of Quantlab GP's membership interests.  Def. Quantlab Group GP, LLC's Mot. (1) to Compel Compliance With Dispute Resolution Procedures and Arbitration, and (2) for Status Quo Order in Aid of Same, Ex. F ("Bosarge Aff.") ¶ 2; Tr. 41:10–15.

[11] Tr. 41:10–15; *see* LLC Agmt., pmbl.; Townsend Aff., Ex. C (Amended and Restated Voting Trust Agreement ("VTA")), pmbl.  The Eames family controls AVG, which holds 25% of Quantlab GP's membership interests.  VTA § 4.1 (specifying Eames as the AVG representative).  Quantlab GP's LLC Agreement names "Marco, LLC" and "AVG Holdings, LLC" as its members.  *See* LLC Agmt., pmbl.  The record suggests that the Quantlab GP member entities are now Marco LP and AVG Holdings, LP. *See* Pls.' Answering Br. in Opp'n to Def. Quantlab Gp. LLC's Mot. for Partial Summ. J. ("Pls.' Answering Br.") 8; Tr. 41:10–15; VTA, pmbl.

Non-party, Bosarge, founded Quantlab LP in 1995 "for the purpose of becoming a world leader in high frequency trading."[12]  Bosarge, and Bosarge family entities, collectively hold 71.96% of Quantlab LP's Class A limited partnership interests.[13]  Bosarge is also a manager of Quantlab GP.[14]

## B. The Relevant Agreements

The parties' dispute over the rightful management of Quantlab LP implicates three contracts: Quantlab LP's limited partnership agreement (the "LPA"), a voting trust agreement among certain of Quantlab LP's limited partners (the "VTA") and Quantlab GP's LLC agreement. [15]  I discuss each in turn below.

### 1.  The Limited Partnership Agreement

Quantlab LP is governed by the LPA.  Pursuant to the LPA, Quantlab LP's general partner "shall be responsible for the exclusive management, operation and

---

[12] Bosarge Aff. ¶ 1.

[13] Compl., Ex. A, at Ex. A; Bosarge Aff. ¶ 1.

[14] Bosarge Aff. ¶ 2.

[15] The parties disagree over the extent to which the VTA and LLC agreement are relevant to this dispute.  *See* Pls.' Answering Br. 8; Def. Quantlab Gp. GP, LLC's Reply Br. in Further Supp. of its Mot. for Partial Summ. J. ("Def.'s Reply Br.") 3–4; Tr. 32:3–35:12. I address these arguments below.

control of the business and affairs of the Partnership."[16] When more than one general partner is admitted, management authority is "joint and several."[17] The LPA makes clear that Quantlab LP's limited partners may "not take part in the management and control of the business" and may not "interfere[] in the management of the Partnership affairs."[18]

Pursuant to LPA § 5.3, "additional General Partners may be admitted only with the consent of all General Partners and the consent of a Super Majority in Interest of the Limited Partners . . . ."[19] And pursuant to LPA § 5.4, "a General Partner may not be removed unless there is at least one remaining General Partner."[20]

---

[16] LPA § 5.2(a).

[17] *Id.*

[18] LPA §§ 5.11, 5.13. "Limited Partners" are defined as "Person(s) admitted to the Partnership as original, additional or substituted Limited Partners . . . and includes both Class A Partners (other than the General Partner), Class B Partners, Class C Partners, Class D Partners, Class E Partners [,] Class G Partners, and Partners holding any other class (or sub-class thereof) of Partnership Interests created pursuant to this Agreement." *Id.* § 1.88. Section 5.12(b) of the LPA also provides that "[e]xcept as expressly provided in Section 5.12(a) or as required by the Act, the Limited Partners . . . shall have no right to vote or otherwise participate in the management of the Partnership in respect of any Partnership Interest." *Id.* § 5.12(b).

[19] LPA § 5.3.

[20] LPA § 5.4. If there is at least one remaining general partner, a "Super Majority in Interest of the Limited Partners" can remove a general partner. *Id.* "Super Majority in Interest of the Limited Partners" is defined as more than 80% of Class A-2 Interests. *Id.* § 1.136.

"[I]f a General Partner is in material breach of any of its obligations" or commits "any act or omission of gross negligence, fraud or malfeasance to the injury of the Partnership," however, it may be removed by a "Majority in Interest" even if it is the sole general partner at the time.[21]

### 2. The Voting Trust Agreement

Several of Quantlab LP's Class A limited partners entered into the VTA in November 2010 (effective September 2010). The signatories were Marco, AVG, Eames, Veloce LP, Omeltchenko, Aster Securities (US) LP, Quantlab GP and David J. Houston.[22] The VTA defines Marco, AVG, Eames, Veloce LP, Omeltchenko and Aster Securities (US) LP as "Limited Partners"[23] who combined

---

The Class A-2 Partnership Interest Holders are identical to the Class A Interest Holders. *See* LPA, sched. A.

[21] LPA § 5.4. "'Majority in Interest' means a Partner or Partners whose Class A-2 Percentage Interest represent more than 50 percent of the Class A-2 Percentage Interests of all the Partners." *Id.* § 1.91. "Partner," in turn, "means a Partner (whether limited or general) of the Partnership . . . ." *Id.* § 1.100.

[22] VTA, pmbl.

[23] *Id.*

their Quantlab LP Voting Interests[24] by irrevocably assigning and transferring them to a Voting Trustee.[25]  Quantlab GP is not included in the definition of "Limited Partners."[26]  Pursuant to the VTA, the Voting Trustee is empowered to vote the Limited Partner Interests "as directed by the [majority vote of the] Voting Trust Committee," which comprises Bosarge, Eames and Omeltchenko.[27]

By virtue of the combination of interests reflected in the VTA, the Voting Trustee holds (and controls) at least 96% of Quantlab LP's Class A limited partnership interests, which constitutes a supermajority of Quantlab LP's voting

---

[24] The VTA refers to the LPA for the definition of "Voting Interest."  VTA, at Recitals. The LPA defined the term "Voting Interest" as the "right of the Class A Partners to vote with respect to their Class A Partnership Interest."  LPA § 1.144.

[25] VTA § 2.1.  The VTA defines David J. Houston "together with any successors" as the "Voting Trustee."  *Id.* at pmbl.

[26] *See* VTA, pmbl. Quantlab GP's signature does appear under the "Limited Partners" designation, however.

[27] VTA §§ 4.1, 4.4, 5.2.  "The Voting Trust Committee shall consist of three members which initially shall be W.E. Bosarge, Jr (representing Marco and Veloce—the 'Bosarge Appointee'), Bruce Eames (representing AVG and himself—the 'Eames Appointee') and Andrey Omeltchenko (representing Aster and Omeltchenko—the 'Omeltchenko Appointee')."  *Id.* § 4.1.  "Where the Voting Trust Committee is more than one person, a majority vote of its then-serving members shall be entitled to authorize any official act of the Voting Trust Committee."  *Id.* § 4.4.

limited partnership interests.[28] While the VTA expressly contemplates that the parties will amend the LPA to acknowledge that the LPA is "restricted by and subject to the terms of [the VTA]," it does not appear that the amendment to incorporate the VTA carried over to the current version of the LPA.[29]

### 3. The LLC Agreement

Also relevant to this dispute is the Operating Agreement for the Quantlab Group GP, LLC (the "LLC Agreement"). The LLC Agreement provides that Quantlab GP was "formed for the sole purpose of acting as the general Partner of [] Quantlab [] LP," and "cannot carry on any business other than acting as the General Partner of [Quantlab] LP without the unanimous consent of all the Members."[30]

---

[28] Compl. ¶ 5. Schedule A to the LPA seems to indicate that the Voting Trustee controls close to 99% of the Class A Partnership Interests. While I note that difference here, it does not bear on my decision; thus, I need not (and do not) undertake to reconcile the difference.

[29] VTA § 2.4.1. Indeed, the current LPA contains no reference to the VTA.

[30] LLC Agmt. § 2.5. "Members" are defined as "an Initial Member [Marco and AVG] or a Person who otherwise acquires a Membership Interest, as permitted under this Agreement, and who remains a Member." *Id.* § 1.23. "'Membership Interest' means a Member's right in the Company, collectively, including the Member's Economic Interest, any right to Vote or participate in management, and any right to information concerning the business and affairs of the Company." *Id.* § 1.24.

Quantlab GP is a manager-managed LLC.[31]   Per Section 5.1 of the LLC

Agreement, Quantlab GP's managers can "act[] alone without approval or consent

of the other Manager[s] . . . to transact business on behalf of and for the benefit of

[Quantlab GP]," subject to the limitations of Section 5.4.  Section 5.4, in turn,

provides that a "Manager shall not take . . . [a]ny act that would make it impossible

to carry on the ordinary business of [Quantlab GP] or [Quantlab LP]" or that would

cause "[a] change in the nature of the principal business of [Quantlab GP] or

[Quantlab LP] . . . unless a Majority [] of Members has consented to the taking of

such action."[32]

### C. Plaintiffs Purport to Admit Quantlab GP II as General Partner of Quantlab LP and Remove Quantlab GP as General Partner

On November 6, 2017, Plaintiffs—acting as a majority of the Voting Trust

Committee—executed a written consent instructing the Voting Trustee to vote the

Voting Trust Interests to admit and appoint Quantlab GP II as general partner of

---

[31] LLC Agmt. § 5.1

[32] LLC Agmt. §§ 5.4(a), (e).  "'Majority of Members' means a Member or Members whose Percentage Interest represent more than 50 percent of the Percentage Interests of all the Members." *Id.* § 1.21.

Quantlab LP and remove Quantlab GP as general partner.[33] The Voting Trustee did as instructed.[34] At or around the same time, Eames, as manager of Quantlab GP, purportedly consented on behalf of Quantlab GP to add Quantlab GP II as a second general partner of Quantlab LP.[35]

### D. Procedural Posture

Later that day, Plaintiffs filed a Verified Complaint (the "Complaint") pursuant to 6 *Del. C.* § 17-110 seeking a declaration that Quantlab GP II is the sole general partner of Quantlab LP. The parties cross-moved for a status quo order. The Court entered a status quo order on November 30, 2017, keeping Quantlab GP in place as general partner of Quantlab LP pending the final resolution of this matter.[36]

---

[33] Compl. ¶¶ 7–8 & Ex. 3 (Nov. 6, 2017 Voting Trust Committee Written Consent); Pls.' Answering Br. 9; Def.'s Opening Br. 12. By the same written consent, the Voting Trust Committee first admitted Allen Dempster as the new Voting Trustee. Compl., Ex. 3. The parties dispute whether the position of Voting Trustee was vacant at that time. Compl. ¶ 7; *see also* Def.'s Opening Br. 12 & n.6. Since the resolution of that dispute does not bear on my decision, I need not (and do not) resolve it.

[34] Compl. ¶ 11 & Ex. 4 (Nov. 6, 2017 Written Consent of a Super Majority in Interest of Limited Partners of Quantlab LP). Defendant disputes the temporal order of the actions that effected its purported removal. *See, e.g.*, Def.'s Opening Br. 26 (explaining that the addition and removal occurred simultaneously).

[35] Compl. ¶ 11 & Ex. 5 (Nov. 6, 2017 Quantlab GP Written Consent).

[36] D.I. 14 (Judicial Action Form Status Quo H'rg); D.I. 33 (Tr. of Nov. 21, 2017 H'rg).

Quantlab GP answered Plaintiffs' Complaint on December 11, 2017 and then, on

December 14, 2017, moved for partial summary judgment (the "Motion").

## II. ANALYSIS

Under Court of Chancery Rule 56(c), summary judgment will be granted "if

the pleadings, depositions, answers to interrogatories and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."[37]

The movant initially bears the burden to demonstrate that no genuine issue of

material fact exists.[38] In determining whether the movant has met that burden, the

court must view the evidence in the light most favorable to the non-moving party.[39]

"When the issue before the Court involves the interpretation of a contract,

summary judgment is appropriate only if the contract in question is unambiguous."[40]

---

[37] Ct. Ch. R. 56(c).

[38] *In re Answers Corp. S'holders Litig.*, 2014 WL 463163, at *10 (Del. Ch. Feb. 3, 2014).

[39] *Id.*

[40] *United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 829 (Del. Ch. 2007).

Ambiguity exists if the court "may reasonably ascribe multiple and different interpretations to [the] contract."[41]

### A. The LPA Does Not Permit The Simultaneous Removal and Replacement of the General Partner

Plaintiffs contend that Quantlab GP's consent was not required for the addition of a second general partner (Quantlab GP II) because "the limited partners simultaneously [voted] their interests to remove and replace the incumbent General Partner" as permitted by the VTA.[42] According to Plaintiffs, it would be nonsensical to create a regime whereby a sole general partner, in essence, would have to facilitate its own removal by consenting to the addition of a new general partner before any removal could be effected.[43] That interpretation of the agreements "would effectively negate the entire purpose of the [VTA],"[44] which Plaintiffs contend must be interpreted along with the LPA.[45]

---

[41] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).

[42] Pls.' Answering Br. 6–7.

[43] Pls.' Answering Br. 6.

[44] Plaintiffs contend the purpose of the VTA was to "combin[e] the voting power of [the] Class A partnership interests and exercis[e] that collective voting power as a single unit." Pls.' Answering Br. 15.

[45] Pls.' Answering Br. 12.

Under Plaintiffs' reading of the agreements, the requirement that more than one general partner be in place prior to removal of a general partner (Section 5.4 of the LPA) was intended solely to prevent Quantlab LP's dissolution for want of any general partner.[46] Since the simultaneous removal and replacement of the sole general partner assuages that concern, Section 5.4 of the LPA is inapplicable in this setting. Thus, Quantlab GP could be removed without the prior addition of a new general partner. At the very least, Plaintiffs contend that the operative contractual provisions are susceptible to their proffered construction and, therefore, summary judgment is inappropriate.[47]

Defendant, on the other hand, argues that the VTA is no longer incorporated within the LPA. But even if it were, the LPA's terms clearly provide that Quantlab GP could not be removed as sole general partner without first adding a new general partner, and that admitting a new general partner required Quantlab GP's consent.[48]

---

[46] Pls.' Answering Br. 6 (citing LPA § 14.1(a) (Events of Dissolution, event of withdrawal of a general partner)).

[47] Pls.' Answering Br. 11.

[48] Def.'s Opening Br. 25 & n.9.

After carefully reviewing the agreements, I am satisfied that the LPA's express terms support only Defendant's construction, even if the VTA were intended to be incorporated into the current LPA. Section 5.4 of the LPA provides that, absent "for cause" removal, "a General Partner may not be removed unless there is at least one remaining General Partner."[49] And Section 5.3 provides that the addition of a new general partner requires the consent of the existing general partner(s) *and* the consent of a Super Majority in Interest of the Limited Partners. Thus, the LPA clearly establishes that (1) Quantlab GP could not be removed as Quantlab LP's sole general partner prior to the addition of a new general partner; and (2) Quantlab GP's consent was required to admit Quantlab GP II as general partner.[50] Had the parties intended to limit these requirements to allow for simultaneous removal and replacement of the lone general partner without consent, they easily could have done

---

[49] LPA § 5.4.

[50] Plaintiffs assert they could seek to amend the LPA in the future to "eliminate any uncertainty" "concerning the Super Majority's authority to remove the General Partner for any reason" through the VTA. *See* Pls.' Answering Br. 7. While this may be true, they have not yet attempted to do so. My focus at this stage, therefore, must be on the LPA in its current form.

so.[51]  Thus, the dispositive question here is whether Quantlab GP consented to add Quantlab GP II as general partner of Quantlab LP.

### B. Quantlab GP Did Not Consent to Add Quantlab GP II as a General Partner of Quantlab LP

According to Plaintiffs, even if the LPA requires Quantlab GP's consent to admit a new general partner to Quantlab LP, Quantlab GP had "already provided [that] consent . . . by signing on to the [VTA] and agreeing to abide by majority rule of [the Voting Trust Committee, comprising] Bosarge, Eames and Omeltchenko."[52] In this regard, Plaintiffs contend, "[i]t would be inconsistent and nonsensical for Marco, LP [signatory to and Limited Partner under the VTA] to agree that its Quantlab [LP] partnership interests would be voted one way, but then use its 75% interest in Quantlab GP to frustrate the acts of the Voting Trustee to which it had already consented . . . ."[53]

---

[51] *See Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 1930428, at *6 (Del. Ch. June 19, 2007) (Defendants "could have easily included a provision that accounted for MPI's lengthy valuation process, had they intended for such a provision to exist.").  I note that Section 14.1(a) of the LPA, cited by Plaintiffs in support of their argument, addresses dissolution after the *withdrawal* of a general partner rather than after its removal.  Thus, that section does not support Plaintiffs' argument.

[52] Pls.' Answering Br. 16; *see also id.* at 7.

[53] Pls.' Answering Br. 16.

In addition to invoking the VTA to support their consent argument, Plaintiffs argue that Eames consented, on behalf of Quantlab GP, to admit Quantlab GP II as a general partner of Quantlab LP in his capacity as a Quantlab GP manager.[54] Invoking Section 5.1 of the LLC Agreement, Plaintiffs maintain that Eames could take such action without majority vote of Quantlab GP's members because (1) he was acting for the benefit of Quantlab GP and (2) his actions did not change Quantlab GP's business. As to their first argument, Plaintiffs posit, "what's in the best interest of [Quantlab LP] should also be what is in the best interest of [its] general partner."[55] Since Eames consented to Quantlab GP II's addition as general partner to prevent Bosarge's management from causing further loss to Quantlab LP, his conduct was for Quantlab LP's benefit and, by extension, for Quantlab GP's benefit as well.[56] As to their second argument, Plaintiffs submit that Quantlab GP's business was not changed because Eames consented only to the addition of Quantlab GP II as a second general partner—not to Quantlab GP's removal. Since Quantlab GP remained a

---

[54] Pls.' Answering Br. 7.

[55] Tr. 46:8–10.

[56] Tr. 46:10–16.

general partner of Quantlab LP after Eames' consent—even if only for an instant—no change in Quantlab GP's business occurred.[57]

In response, Defendant argues that its signature on the VTA does not constitute consent to the Voting Trustee's actions because: (1) it transferred neither its limited nor general partnership interests to the Voting Trustee; (2) the transfer of the general partnership interest would have violated the LPA; and (3) the VTA is a separate agreement which was never intended to impact the LLC Agreement or Quantlab GP's membership interests.[58]

Defendant further contends that Eames could not consent to add Quantlab GP II as general partner without at least the majority vote of Quantlab GP's members because the addition of a second general partner was not "for the benefit of" Quantlab GP and fundamentally changed the nature of its business. In this regard, Defendant emphasizes that Quantlab LP and Quantlab GP are separate entities.[59] Thus, conduct that benefits one does not necessarily benefit the other. And there is no scenario where adding Quantlab GP II as a general partner of

---

[57] Tr. 48:7–49:2.

[58] Def.'s Opening Br. 25–27; Def.'s Reply Br. 12–15.

[59] *See, e.g.*, Tr. 54:2–3 ("[T]he LLC and the LP operate in different worlds.").

Quantlab LP could be viewed as benefiting Quantlab GP. Quantlab GP's purpose is to act as "*the* General Partner" of Quantlab LP; it is not to be "*a* General Partner" with a 50% vote in Quantlab LP's management. According to Defendant, since going from being *the* general partner to *a* general partner with a 50% vote is clearly a change in the nature of Quantlab GP's business, Section 5.4 of the LLC Agreement required at least a majority vote of Quantlab GP's members before the entity could consent to add a new general partner.

As noted, Plaintiffs argue that Quantlab GP II's admission as general partner of Quantlab LP was effected by consent in either or both of two ways: (1) by Quantlab GP signing the VTA, thus, agreeing in advance to the actions taken by the Voting Trustee and (2) by Eames separately consenting on behalf of Quantlab GP in his capacity as manager of Quantlab GP. I address each argument in turn below.

*First*, Plaintiffs' argument that Quantlab GP consented in advance to its removal and replacement by signing the VTA does not comport with the clear terms of the LLC Agreement. Even if the Court were inclined to read the VTA into the LPA (despite the fact that the LPA makes no reference to the VTA),[60] that same

---

[60] As previously noted, Defendant disputes that the VTA has any bearing on the current LPA, which explains why the VTA is nowhere referenced in the LPA. Def.'s Reply Br. 3. In this regard, Defendant emphasizes that the LPA has an integration clause at Section 17.12. While Defendant's argument on this point is persuasive, I need not adopt it

exercise of blue-penciling could not be justified with respect to the LLC Agreement. It is clear that none of Quantlab GP's members ever agreed to have their Quantlab GP *membership interests* voted by the Voting Trustee.

Moreover, *Quantlab GP* did not consent to have its limited partnership interests voted by the Voting Trustee; Quantlab GP is not one of the VTA's "Limited Partners" and did not transfer its limited partnership interest to the Voting Trustee.[61] Thus, it did not consent in advance to *any* action taken by the Voting Trustee.

And, even if Quantlab GP had transferred its *limited* partnership interest, thus indicating its consent to have that interest voted by the Voting Trustee, it did not (and, indeed, could not) transfer its *general* partnership interest or its contractual rights under the LPA to the Voting Trustee. The LPA provides that Quantlab LP's general partner is its only manager and specifically prohibits its limited partners from participating in management.[62] Thus, any attempted transfer of Quantlab GP's

_____

because I am satisfied that Plaintiffs' construction of the operative agreements is not reasonable even assuming the VTA somehow modifies the LPA.

[61] VTA, pmbl. ("Collectively, Marco, AVG, Eames, Southport and Omeltchenko are referred to as the "Limited Partners."). Pursuant to Recital J of the VTA, only "[t]he Limited Partners desire[d] to combine their voting power" and agreed that their interests "shall be voted as provided in" the VTA.

[62] LPA § 5.13(a) ("A Limited Partner will breach this Agreement if the Limited Partner . . . (2) interferes in the management of the Partnership affairs . . . ."). The intent to give

general partnership interest or rights to the Voting Trustee would be invalid under the LPA.

Therefore, even assuming the VTA is still in effect, nothing in that agreement suggests that Quantlab GP consented to allow the Voting Trustee to act on its behalf.[63]   More simply stated, the VTA is not Plaintiffs' "golden ticket" to Quantlab LP's levers of control.

*Second*, Plaintiffs' argument that Eames consented to the admission of Quantlab GP II on behalf of Quantlab GP fails because Eames lacked any authority unilaterally to consent to the admission of a new general partner.   Pursuant to

separate legal significance to the limited and general partner votes is further demonstrated by certain actions listed in Sections 5.3 and 5.6, requiring *both* the consent of the general partners and a vote/consent of the super-majority of Quantlab LP's limited partners.  If the general partner vote was or could be combined with the limited partner votes, these requirements would be a nullity.  *See E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985) ("[W]e would in effect be reading such prohibition out of the License Agreement. To do so would be to violate the cardinal rule of contract construction that, where possible, a court should give effect to all contract provisions.").

[63] Pls.' Answering Br. 7.  Plaintiffs point to a 2012 statement made by Quantlab LP's associate general counsel and a proposed amendment to the VTA presented by Bosarge that same year, arguing that both show that "the Voting Trustee retains the ability to vote *all* Class A partnership interests for *any* matter requiring a vote, including the removal and admission of the General Partner of Quantlab [LP]." *Id.* at 5.  That argument is unavailing. To start, the LPA's terms are unambiguous.  Thus, I cannot consider extrinsic evidence to interpret the contract.  Even if I could, however, neither the statement nor the proposal addresses the separate rights of the general partner.  Thus, neither support Plaintiffs' position.

Section 2.5 of the LLC Agreement, Quantlab GP "cannot carry on any business other than acting as *the* General Partner of [Quantlab LP] *without the unanimous consent* of all of [Quantlab GP's members]."[64] Section 5.1 of the LLC Agreement provides that a manager can act unilaterally on behalf of Quantlab GP only when acting "for the benefit of [Quantlab GP]."[65] And per Section 5.4, a manager may not "take . . . [a]ny act that would make it impossible to carry on the ordinary business of [Quantlab GP] or [Quantlab LP]" or that would cause "[a] change in the nature of the principal business of [Quantlab GP] or [Quantlab LP]" without the consent of the majority of Quantlab GP's members.[66]

When Eames purported to consent (on behalf of Quantlab GP) to add Quantlab GP II as a general partner of Quantlab LP—whatever his reason(s) for doing so—he changed Quantlab GP's business from acting as *the* general partner of Quantlab LP to being *a* general partner (with only a 50% vote). And, he purported to take this action without first receiving the consent of the majority of Quantlab GP's members. His unilateral action violated Sections 2.5 and 5.4 of the LLC Agreement.

---

[64] LLC Agmt. § 2.5 (emphasis supplied).

[65] LLC Agmt. § 5.1.

[66] LLC Agmt. §§ 5.4(a), (e).

Furthermore, Eames' unilateral action cannot be characterized as "for the benefit of" Quantlab GP. By eliminating Quantlab GP's role as Quantlab LP's sole manager, Eames set Quantlab GP adrift with no purpose or function. Before he could neutralize Quantlab GP in that manner, Eames was obliged to secure the consent of the majority of Quantlab GP's members. In this case, he failed to do so. Consequently, his purported consent on behalf of Quantlab GP is without legal effect.

### C. Contextual Considerations

Before concluding the contract construction exercise here, I pause to consider the LPA in its real-world commercial context, as our law requires.[67] Plaintiffs are correct to note that, under Defendant's construction of the LPA, Quantlab GP may not be removed as general partner unless it first consents to the addition of another

---

[67] *See Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 926–27 (Del. 2017) ("The basic business relationship between [contract] parties must be understood to give sensible life to any contract."); *Heartland Payment Sys., LLC v. Inteam Associates, LLC*, 171 A.3d 544, 557 (Del. 2017) ("Before stepping through the specific contractual provisions it is helpful to look at the transaction from a distance, because '[i]n giving sensible life to a real-world contract, courts must read the specific provisions of the contract in light of the entire contract.'" (quoting *Chicago Bridge*, 166 A.3d at 913–14))).

general partner (absent good cause for Quantlab GP's removal).[68] As Plaintiffs observe, this construction of the LPA allows the general partner to control the timing and circumstances of its own removal. Even so, as discussed below, this regime makes perfect sense given the significant ownership stake of Bosarge and his family entities in Quantlab LP.

By providing that Quantlab GP would serve as Quantlab LP's general partner with certain consent rights, the parties positioned Bosarge and his family to protect their 75% ownership interest in Quantlab GP. By transferring the majority of Quantlab LP's Class A limited partnership interests (of which Bosarge and Bosarge family entities hold a majority) to a voting trustee directed by majority vote of a voting trust committee, the parties assured Eames that Bosarge could not single-handedly take over Quantlab LP.[69] And, by providing that certain actions, such as the addition of a new general partner, require the vote of *both* the existing general partner and the majority of the Class A limited partnership interests, the LPA

---

[68] Pls.' Answering Br. 6, 12.

[69] *See* Pls.' Br. in Resp. to Def.'s Mot. for Status Quo Order and in Supp. of their Cross-Mot. for Order Maintaining Status Quo 4 ("[T]he entire purpose of the [VTA] was to ensure that Mr. Bosarge could not exercise exclusive control over the affairs of Quantlab [LP] in the event of a dispute between Mr. Bosarge and Mr. Eames.").

protects both sets of interests.[70] While certain of the limited partners may now be displeased with their inability to direct Quantlab LP's day-to-day business, this arrangement reflects a bargained-for allocation of interests and influence. Of course, should Quantlab LP's limited partners agree at some point that this scheme is no longer desirable, they can, by a super majority vote, amend the LPA to change the arrangement.[71]

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment is **GRANTED**. Defendant shall submit an implementing order, on notice to Plaintiffs, within ten (10) days.

Very truly yours,

*/s/ Joseph R. Slights III*

---

[70] Other actions requiring both votes are listed in Section 5.6 of the LPA and include, *inter alia*, encumbering partnership assets and admitting "additional or substitute partners except as otherwise provided in Sections 5.3, 14.3, or Article XI of [the LPA]." LPA §§ 5.6(a), (l).

[71] LPA § 5.12(a).